| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MADISON CIRCUIT COURT |
| | ) | DIVISION |
| COUNTY OF MADISON | ) | |
| | ) | CAUSE: 48C05-2401-MC-000029 |
| | ) | |
| IN THE MATTER OF THE APPLICATION OF THE PEOPLE OF THE STATE OF INDIANA FOR A WARRANT AUTHORIZING THE DISCLOSURE OF CONTENT DATA ASSOCIATED WITH FACEBOOK **100045270723950** THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS INC | ) | RECEIVED 01/03/2024 MADISON CO. CLERK HM |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT FOR HISTORICAL META CONTENT AND LOCATION INFORMATION

Your affiant, Detective Brian Gehrke a law enforcement officer with the Anderson Police Departemnt, being duly sworn, swears and affirms under penalties for perjury that the following statements are true and accurate to the best of my knowledge:

1. I am a police officer with the Anderson Police Department I am a "law enforcement officer" as that term is defined in Ind. Code 35-31.5-2-185. I am currently assigned as Detective.

2. I have been working for the Anderson Police Department for 15 years. I was a graduate of the Indiana Law Enforcement Academy in 2008. Since that time I have been involved in the investigations of, and made several misdemeanor and felony arrests for a multitude of crimes including, drug offenses, batteries, robberies, thefts, as well as several other criminal offenses. I was promoted to the detective status in October of 2023.

3. I have received information that the offense of Possession of animals for fighting contests (IC: 35-46-3-8) was committed on or about 10/31/2023 by Thomas A. Rayford Jr. During and/ or after the commission of these crimes, it is believed the targeted subject and/ or related individuals may have used the Facebook account located at:

   https://www.facebook.com/ **100045270723950**

   This account has the photos of Thomas Rayford Jr. attached to it. The name of Tayda Rayford is posted on the account which is a name that he has used in business dealings with his transportation company and the dog kennel he is associated with. The last name of Rayford is also his legal last name. The account states he is from Anderson Indiana.

4. The information that is set forth below in this Search Warrant Affidavit is either information known personally to me, information I obtained from other Law Enforcement sources,

information obtained from public records, the internet via open sources, or information from a source otherwise identified in this Search Warrant Affidavit.

**Investigation**

On 10/31/23 at approximately 13:14 hours, Officers of APD arrived at 2030 Dewey St. in reference to assisting Animal Control Director, Kris Ockomon. Director Ockomon arrived to investigate a complaint of neglect on multiple dogs at this location. Upon his arrival, he located several dogs that were separated in the yard, being contained with heavy log chains. Some of the dogs appeared to be malnourished and in need of medical attention. He made contact outside with a M/B subject that he recognized as Thomas Rayford Jr.. Director Ockomon advised he recognized Mr. Rayford through his multiple years of being an officer and detective for APD, having prior dealings with him.

Mr. Rayford walked inside the house and was not seen again. Shortly after, a female identified as Elizabeth Goodson walked out and confronted all representative from APD. Director Ockomon advised Ms. Goodson that he would be taking her dogs due to their health conditions and the conditions of their living environment. Ms. Goodson argued with Director Ockomon that she would not allow him to take her dogs. Ms. Goodson made several comments eluding to the fact that they were her dogs. These comments were recorded by responding officers body cameras.

Animal Control Officers then started to retrieve the dogs. None of the dogs were aggressive towards people; however, they were showing signs of aggression towards other dogs. Upon closer inspection of the dogs there were injuries on several of the dogs that were in various stages of healing. These injuries are consistent with injuries that are suffered during dog fighting contests. One of the dogs appeared to have an injury to it's bottom lip where it had been torn away. The injury looked severely infected. A total of ten dogs were removed from the property. All dogs were placed into several vehicles and transported to the animal shelter. Four of the dogs were placed into the animal control truck that has multiple cages that are separated by welded metal partitions. There were two dogs next to each other on both sides of the truck. Upon arrival at the shelter, animal control officers and shelter staff realized that the dogs were fighting. Once the cages were opened, it was learned that the dogs had broken through the metal partitions and attacked each other. On each side of the truck was a dog that was either deceased or very close to death. This is an indication that these dogs have been trained for fighting.

Eventually all the dogs were euthanized for various reasons. The remains were sent to the Indiana State Board of Animal Health for an evaluation. Melissa Justice , DVM, District 6 Field Veterinarian's report indicated that the animals showed various signs of neglect and appeared to have been used several times for fighting.

After this incident, I was assigned this case for investigation. I began my investigation by looking into the social media accounts of both Thomas Rayford Jr. and Elizabeth Goodson. Ms. Goodson has made several posts in regard to Animal Control taking her dogs. She made several statements that the dogs were in fact hers. Thomas Rayford Jr. has several Facebook posts that show him with some of the dogs that were removed from 2030 Dewey St. He has other posts on his account that indicate possible involvement in fighting. In 1999, Mr. Rayford was arrested for attending a dog fighting contest. I was given the online listing of the pedigree paperwork for a male pitbull named Lazarus. Lazarus was one of the dogs that were involved in the fight while being transported by Animal Control. This pedigree document shows that he was bred from other fighting dogs.

I hereby request a warrant to view both the Facebook and Instagram accounts of Thomas Rayford Jr. (5/20/1979) and Elizabeth Goodson to view posted information, or conversations that may be related to the promotion of dog fighting, or the use of animals in dog fighting.

In my training and experience, persons with access to Facebook utilize its messaging service to communicate about crimes or engage in criminal activity.

Mr. Rayford has posted photos of dogs that were removed from 2030 Dewey St. Anderson IN. on 10/31/23. These dogs had injuries that are consistent with fighting animals. It is common for people who participate in animal fighting activities to post messages or other information on social media accounts in regards to upcoming fights, the sale, or breeding of fighting animals, or to discuss recent wins.

I request records to include: About me information, Account Status History, Active sessions, Address, Alternate names, Chat, Check-ins, Deleted Friends, Emails, Family, Friends, Groups, Items hidden from the news feed, IP addresses, Linked accounts, Messages, Name changes, Phone numbers, Photos, Photos metadata, Posts, Status Updates, Friends Nearby Locations, Location History, Payment Services and Vanity URL. (See explanation of each below).

I request records between **10/31/2021 – 12/22/2023**

**The investigation indicates the Mr. Rayford has been accepted into several groups that are allegedly participating in dog fighting. It takes a long time in order for a person to be accepted into underground dog fighting groups. Since these groups are operating illegally the process of vetting people becomes extremely important as they do not want anyone to provide secretive information to the general public or law enforcement. Mr. Rayford was arrested in 1999 for visiting an animal fighting contest.**

Each of these records are either identifying information, deleted information, or location information. Other categories are also described below. Each of these categories can provide investigators with information about what was happening with the target account and the actions taken by the user of the account during and immediately after the crime. Records predating the crime, within a reasonable time, are needed to establish or eliminate whether there was any preexisting conversation or relationship between the victim or any witness(es) that may establish a motive, bias, or interest.

**<u>Information About Facebook.com</u>**

Facebook.com is an online social networking site operated by Meta Platforms, Inc., whose company headquarters is located in Menlo Park, California. According to Facebook, Facebook.com has over one billion active users, more than half of whom use the service through a mobile device.

Users of Facebook.com create a personal profile that is unique to the user and stored on the site using a number known as a Friend ID, or in lieu of the friend ID, a username that typically consists of a combination of letters, numbers and characters such as, but not limited to, periods or underscores. As

users of the site, members can add other users as "friends." Users can communicate with each other on the site through various methods, including private messages, posts on other users "walls", and through posts known as "status updates". Users may also join common interest user groups, organized by workplace, school or college, or other characteristics of shared interests. Users can also upload photos and videos to the service.

Through my training and experience, and in consultation with other members of law enforcement who have conducted investigation involving social media websites, I have learned that Meta Platforms, Inc. (Facebook) retains the following information about Facebook.com user profiles:

1. About me information – Information the user added to the "About" section of their profile, for example: relationships, work, education, birthday, current city, gender, and other demographic information. The retained data also includes changes the user has made to this information in the past. This information can be used to assist in identification of the users of an account.

2. Account Status History – The dates the account was reactivated, deactivated, disabled, or deleted.

3. Active sessions – All stored active sessions, including date, time, device used, Internet Protocol (IP) address used to access the service, machine cookie and browser information. This information can be used to assist in identification of the users of an account.

4. Address – Any current or past addresses the user provided on their account.

5. Alternate names – Any alternate names the user has added to their account, such as maiden names or nicknames.

6. Chats – A history of conversations the user had on Facebook Chat.

7. Check-ins – A history of places a user has checked into. Check-in is a service that allows users to post their location, often associating the location with a business or an event. This information can be used to locate places that a Facebook user may frequent, and in some cases users will "check-in" at home, identifying where they live.

8. Deleted Friends – The users the account user has deleted from their friends list.

9. Emails – Email addresses the user associated with their account.

10. Family – Facebook friends the user designated were members of their family.

11. Friends – a list of Facebook users who have been added as "friends" of the user.

12. Groups – A list of groups the user belongs to on Facebook.

13. Items hidden from the news feed – Any friends, applications, or pages the user has hidden from their news feed.

14. IP addresses – A list of Internet Protocol (IP) addresses from which the user has logged into their account. Not all IP addresses are included, as Facebook deletes them according to a retention

schedule. IP address logs are useful for determining the location of the internet service used to access the account.

15. Linked accounts – A list of the accounts the user has linked to their Facebook account.

16. Messages – An archive of messages the user has sent and received on Facebook. This typically does not include messages that have been deleted. While one party to a conversation may have deleted a message, these messages can typically be recovered if they have not been deleted by the other party. These messages may also include attachments, such as photos. In the past detectives have been able to identify the user of a Facebook account from information contained in messages to other Facebook users.

17. Name changes – Any changes the user made to the original name the user used when they signed up for the account.

18. Phone numbers – A list of mobile phone numbers the user added to their account.

19. Photos – Any photos the user uploaded to their account.

20. Photos metadata – Any metadata that was included with photos uploaded to the account. Metadata included in an image can sometimes identify the device used to produce an image, and in some cases includes GPS data identifying the location in which the photo was taken.

21. Posts – Anything the user posted to their own page, including photos, videos, and status updates.

22. Registration date – The date the user joined Facebook.

23. Status Updates – Any status updates the user has posted.

24. Vanity URL: The Facebook URL, (ex. Username or vanity name for the account)

25. Facebook Friends Nearby: Any Facebook Friends shared locations.

26. Location History: Any historical location history for account user.

27. Facebook Payment Services - Facebook owns and operates Facebook Payment Services. A pay service for purchases including subscriptions to an app, purchases of products for sale, donations, and person-to-person transfers ("P2P"). For example, this information would aid investigators in developing contact(s) and credit information for the target account listed. Such information allows investigators to determine what individual(s) may be assisting the fugitive related to the crimes under investigation. Accordingly, I believe that access to the electronically stored materials for the target account would provide information that would assist in locating and apprehending Target Subject, a person to be arrested under a warrant that was issued upon the return of an indictment charging him with a state offense.

In certain circumstances, Facebook collects and retains location data from any Facebook enabled mobile device. This includes Android and iPhone devices. The company uses this information for location based advertising and location based search results. Per Facebook, this information is derived from Global Position System (GPS) data, cell site/cell tower information, and Wi-Fi access points. While

the specific parameters of when this data is collected are not entirely clear, it appears that Facebook collects this data whenever one of their services is activated and/or whenever there is an event on the mobile device such as a phone call, text messages, internet access, or email access. I believe this data will show the movements of the suspect's mobile device and assist investigators with establishing patterns of movement, identifying residences, work locations, and other areas that may contain further evidence relevant to the ongoing investigation.

**REQUEST FOR SEARCH WARRANT**

Based on the facts and circumstances set forth above, I am requesting a search warrant to retrieve information concerning the accounts with the following identifier:

**Profile ID:**
**Facebook URL:** https://www.facebook.com/**100045270723950**

1. For each such account, the recovered records should include the following records from **10/31/2021-12/22/2023.** About me information, Account Status History, Active sessions, Address, Alternate names, Chat, Check-ins, Deleted Friends, Emails, Family, Friends, Groups, Items hidden from the news feed, IP addresses, Linked accounts, Messages, Name changes, Phone numbers, Photos, Photos metadata, Posts, Status Updates, Friends Nearby Locations, Location History, Payment Services and Vanity URL.

2. For each such account, Facebook shall provide historical location information from **10/31/2021-12/22/2023**

**NONDISCLOSURE REQUEST**

Pursuant to 18 U.S.C. 2703(a) and (b) and 18 U.S.C. 2705(b), I request that this Court issue an order commanding Meta Platforms, Inc. not to notify any other person about the existence of this warrant, the warrant application, or any related documents, until further Order of the Court. I believe that disclosure of this affidavit and warrant to the target subject or other subscriber would seriously jeopardize the investigation, including by giving the **Target Subject** and other individuals involved the opportunity to flee or continue flight from prosecution, to destroy or tamper with evidence, or notify confederates.

<u>CONCLUSION</u>

Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

**I swear and affirm, under penalty of perjury as specific by Ind. Code 35.44.1-2-1, that the foregoing representations are true and accurate to the best of my knowledge.**

Detective Brian Gehrke
Anderson Police Department

Dated: 01/02/2024